1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11    JACQUELINE KIM SELBY,                          Case No. 09cv2079 BTM(JMA)

12                                    Plaintiff,     **ORDER GRANTING MOTIONS TO**
                                                     **DISMISS**
         v.
13
      BANK OF AMERICA, INC., et al.
14
                                   Defendants.
15

16

17        Defendant Aztec Foreclosure Corporation ("Aztec"), EMC Mortgage Corporation

18    ("EMC"), and GMAC Mortgage LLC ("GMAC"), each have filed a motion to dismiss Plaintiff's

      First Amended Complaint.  For the reasons discussed below, Defendants' motions are
19
      **GRANTED**.
20

21

22                                    I.  **BACKGROUND**

23        This case arises out of ten loans obtained by Plaintiff, which are secured by liens on

24    five residential properties owned by Plaintiff.

25        On October 17, 2005, Plaintiff refinanced her property located at 2831 Angell Avenue,

26    San Diego, CA 92122 (the "Angell property").  She borrowed $648,000 from Stearns

      Lending, Inc ("Stearns").  (Aztec RJN, Ex. A.)  The loan was secured by a Deed of Trust,
27
      which named Stearns as the lender, MERS as a nominee for the lender and a beneficiary,
28
      and Carriage Escrow, Inc. as the trustee.  (Id.)  In a Substitution of Trustee executed on May

                                              1

28, 2009, The Bank of New York, which identified itself as the present beneficiary under the deed of trust, substituted Aztec as the trustee.  (Aztec RJN, Ex. D.)  On May 26, 2009, Aztec recorded a Notice of Default and Election to Sell Under Deed of Trust.  (Aztec RJN, Ex. B.) On August 26, 2009, Aztec recorded a Notice of Trustee's Sale, scheduling the public sale of the Angell property to take place on September 16, 2009.  (Aztec RJN, Ex. C.)   The sale of the property was suspended.  EMC is the alleged servicer of the Angell property loan.

GMAC is the alleged servicer of the second loans secured by junior liens on Plaintiff's other four properties.  Foreclosure proceedings have not been initiated with respect to these second loans.

## II. STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff.  See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).   Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).   "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, __ U.S. __, 129 S,Ct. 1937, 1950 (2009) (internal quotation marks omitted).

///

///

///

# III.  DISCUSSION

## A.  Aztec's Motion to Dismiss

The FAC alleges that Aztec violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f(6)(A), which prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . .  there is no present right to possession of the property claimed as collateral through an enforceable security interest." According to Plaintiff, "Bank of New York's substitution of Aztec was a legal nullity as Bank of New York lacked the power of sale since it had not recorded the assignment by which it allegedly acquired plaintiff's promissory note."  (FAC ¶ 32.)  Plaintiff also asserts a claim against Aztec under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, based on Aztec's alleged violation of the FDCPA.

Aztec argues that Plaintiff should not be able to maintain her claims against Aztec without first tendering a sum sufficient to cure the default.  However, as explained in the Court's previous Order on Motions to Dismiss filed on February 10, 2010, the Court declines to require a tender in this case because Plaintiff is not attempting to set aside a sale that has already taken place.  See Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112, 117 (1971) ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.")  Moreover, the Court has required Plaintiff to post a monthly bond to protect Defendants' financial interests.

Aztec next argues that it is not a "debt collector" within the meaning of the FDCPA and was not attempting to collect a "debt."  The Court rejects this argument.  As explained in the Court's prior order, although a mortgage servicer is not a "debt collector" under the FDCPA's general definition of the term, 15 U.S.C. § 1692a(6), Aztec qualifies as a "debt collector" for purposes of § 1692f(6).

Section 1692a(6) specifies that *for the purposes of § 1692f(6)*, the term debt collector "also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  Thus, even though the FDCPA generally does not apply to actions taken in pursuit of

09cv2079 BTM(JMA)

foreclosure, "the statute expands its reach to enforcers of security interests in one specific instance: where that party seeks to take property to which 'there is no present right to possess.'" Rousseau v. Bank of New York, 2009 WL 3162153, at * 8 (D. Colo. Sept. 29, 2009). See also Overton v. Foutty & Foutty, LLP, 2007 WL 2413026, at * 6 (S.D. Ind. Aug. 21, 2007) ("If a person invokes judicial remedies only to enforce the security interest in property, then the effort is not subject to the FDCPA (other than § 1692f(6) and § 1692i(a))."); Burnett v. Mortg. Elec. Registration Sys., Inc., 2009 WL 3582294, at * 3 (D. Utah Oct. 27, 2009) ("§ 1692f(6) still regulates trustees' conduct while engaging in non-judicial foreclosures."). [1]

Although Aztec qualifies as a "debt collector" for purposes of § 1692f(6), Plaintiff's claim fails because Plaintiff has not alleged facts showing that Aztec had no legal right to initiate foreclosure proceedings against the Angell property.   In her opposition to EMC's motion to dismiss, Plaintiff advances several arguments as to why Aztec had no legal right to initiate foreclosure against the Angell property.   Although Plaintiff's arguments are somewhat muddled, the Court will attempt to address each of them.

Plaintiff's primary argument is that Aztec could not initiate foreclosure on behalf of Bank of New York, because Bank of New York did not record an assignment of the promissory note.  Plaintiff relies on Cal. Civ. Code § 2932.5, which provides:

> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. *The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.*

(Emphasis added.)  Plaintiff contends that because no assignment of the note was ever

---

[1] Aztec also argues that Plaintiff's FDCPA claim fails because Aztec is immune under Cal. Civ. Code § 2924(d), which provides that statutory nonjudicial foreclosure procedures are privileged under Cal. Civ. Code § 47.  California courts have held that the protection granted to nonjudicial foreclosure proceedings is the qualified, common interest privilege of Cal. Civ. Code § 47(c)(1).  A state litigation privilege, however, does not defeat a federal cause of action.  See Pardi v. Kaiser Found. Hosp., 389 F.3d 840, 851 (9th Cir. 2004) (holding that California's litigation privilege did not bar retaliation claim under ADA); OEI v. N Star Capital Acquisitions, LLC, 486 F. Supp. 2d 1089 (C.D. Cal. 2006) (holding that California's litigation privilege did not grant immunity in connection with FDCPA claim).

1    recorded, Bank of New York had no power of sale to exercise.

2        Plaintiff's argument fails because § 2932.5 does not apply where the power of sale

3    is set forth in a deed of trust.  Section 2932.5 applies only to mortgages that give a power

4    of sale to the creditor, not to deeds of trust which grant a power of sale to the trustee.  Roque

5    v. Suntrust Mortg., Inc., 2010 WL 546896, at *3 (N.D. Cal. Feb. 10, 2010).  See also

6    Stockwell v. Barnum, 7 Cal. App. 413, 417 (1908) ("The transferee of a negotiable

7    promissory note, payment of which is secured by a deed of trust whereby the title to the

8    property and the power of sale in case of default is vested in a third party as trustee, is not

9    an incumbrancer to whom power of sale is given, within the meaning of section 858 of the

10   Civil Code [predecessor to § 2932.5].").  Accordingly, courts have rejected claims that

11   defendants lack the right to foreclose where there is no recorded assignment evidencing the

12   transfer of the underlying loan.  See Roque, 2010 WL 546896, at *3 (rejecting argument that

13   power of sale in the deed of trust was no longer valid because the chain of ownership was

14   unrecorded); Parcray v. Shea Mortg. Inc., 2010 WL 1659369, at * 11 (E.D. Cal. Apr. 23,

15   2010) (finding no merit to plaintiff's argument that the foreclosure sale was void because it

16   was not initiated by Shea and there was no recorded assignment evidencing the transfer of

17   the loan from Shea to ALS).

18       Plaintiff also argues that MERS was unable to convey any right to conduct or initiate

19   a foreclosure sale because MERS was not an economic beneficiary under the trust.  It

20   appears that this argument is rooted in the language of Cal. Civ. Code § 2932.5, which

21   states, "Where a power to sell real property is given to a mortgagee, or other encumbrancer,

22   in an instrument intended to secure the payment of money, *the power is part of the security*

23   *and vests in any person who by assignment becomes entitled to payment of the money*

24   secured by the instrument.  (Emphasis added.)  But, as already discussed, section 2932.5

25   does not apply to deeds of trusts and the beneficiaries and trustees thereunder.  See

26   Wurtzberger v. Resmae Mortg. Corp., 2010 WL 1779972, * 3-4  (E.D. Cal. Apr. 29, 2010)

27   (rejecting argument that MERS could not assign beneficiary interest in deed of trust because

28   MERS was not an economic beneficiary and therefore did not have the power of sale).

Upon review of the language of the Deed of Trust, it is clear that MERS had the legal right to initiate nonjudicial foreclosure and could assign such right.  The Deed of Trust named MERS and its successors and assigns as the beneficiary (as nominee for Lender and Lender's successor and assigns).  The Deed of Trust also provided:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS . . . has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

(Aztec RJN, Ex. A.)  Courts have held that regardless of whether MERS is an economic beneficiary or not, this language grants MERS the power to initiate foreclosure under Cal. Civ. Code § 2924.[2]  See Wurtzberger, 2010 WL 1779972, at * 4 (explaining that since the Deed of Trust named MERS as the beneficiary it had the right to foreclose and the authority to assign its beneficial interest under the deed of trust); Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1188-90 (N.D. Cal. 2009) (holding that pursuant to the plain terms of the Deed of Trust and § 2924, MERS had a right to conduct the foreclosure process); Santarose v. Aurora Bank FSB, 2010 WL 2232819, at * 5 (S.D. Tex. June 2, 2010) ("By the plain language of the Deed of Trust, MERS had the right to foreclose the property.").[3]

Finally, Plaintiff argues that under the terms of the Deed of Trust, only the original

---

[2] California Civil Code §§ 2924-2924k provide a "comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust."  Moeller v. Lien, 25 Cal. App. 4th 822, 830 (1994).  Within this framework, nonjudicial foreclosure proceedings can be instituted by "the trustee, mortgagee, or beneficiary, or any of their authorized agents" by filing a notice of default with the office of the recorder.  Cal. Civ. Code § 2924(a)(1).  No less than three months after the filing of the notice of default, a notice of sale may be given by "the mortgagee, trustee, or other person authorized to take the sale."  Cal. Civ. Code § 2924(a)(3).

[3] Plaintiff cites to Saxon Mortgage Serv., Inc. v. Hillery, 2008 WL 5170180, at *5 (N.D. Cal. Dec. 9, 2008), where MERS purportedly assigned both the deed of trust *and the promissory note*, and the court held that there was insufficient evidence that MERS either held the promissory note or was given the authority by the lender to assign the note.  Here, there is no allegation that MERS, as opposed to Stearns, assigned the promissory note.  Nor is there an allegation that the promissory note was not assigned or was assigned to someone other than Bank of New York, resulting in a splitting of the note and deed of trust.  The only allegation is that the assignment of the note was not recorded.

lender, i.e., Stearns, had the right to appoint a successor trustee.  This argument is contradicted by the actual language of the Deed of Trust.  Paragraph 24 of the Deed of Trust provides: "Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. . . . This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution."  Nothing in this paragraph or the other provisions of the Deed of Trust preclude Stearns from assigning its rights under the Deed of Trust.  Indeed,  Paragraph 13 states, "The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender."

As noted by the Court at the hearing on October 26, 2010, there are some gaps in the documentation pertaining to the Deed of Trust and the transfer of rights thereunder. Specifically, there is no documentation before the Court regarding the substitution of the Bank of New York as beneficiary, and there is no proof that Aztec was acting as an authorized agent of the beneficiary or trustee when it filed the Notice of Default.  However, the FAC does not allege that the Bank of New York was not actually the beneficiary, nor does the FAC allege that Aztec was not an authorized agent of the beneficiary or trustee. Therefore, the issues raised by the Court do not affect the outcome of the motions to dismiss.

Plaintiff has not stated facts supporting a plausible claim that Aztec lacked the legal right to initiate nonjudicial foreclosure against the Angell property.  Therefore, Plaintiff's FDCPA claim fails as does Plaintiff's § 17200 claim.

**B.  <u>EMC's Motion to Dismiss</u>**

Plaintiff's sole claim against EMC is for violation of Cal. Bus. & Prof. Code § 17200. Plaintiff alleges that EMC along with Aztec, collected money by claiming that defendants had the power to foreclose even though they lacked such power as a result of the failure to record the assignment(s) of the promissory note.  Plaintiff also alleges that EMC made "a

09cv2079 BTM(JMA)

1    deliberate effort to conceal the identit[y] of the true onwer[ ] of [the] promissory note[ ]," and

2    failed to provide copies of "executed promissory notes, assignment instruments, note

3    endorsements, allonges, pooling and servicing agreements, mortgage identification

4    numbers, and other documents and information that would enable borrowers to track where

5    their notes went after origination."  (FAC ¶ 92.)

6         As for Plaintiff's claim that EMC engaged in unfair business practices by collecting

7    mortgage payments under threat of foreclosure, as discussed above, Plaintiff has not

8    established that Aztec lacked the legal right to institute nonjudicial foreclosure proceedings

9    against the Angell property.  Therefore, this claim fails.

10        With respect to Plaintiff's claim that EMC deliberately concealed the identity of the

11   true owner of the promissory note, Plaintiff has not provided any facts in support of this

12   claim.  Under TILA, "Upon written request by the obligor, the servicer shall provide the

13   obligor, to the best knowledge of the servicer, with the name, address, and telephone

14   number of the owner of the obligation or the master servicer of the obligation."  15 U.S.C.

15   § 1641(f)(2).  In the Court's prior order, the Court pointed out that there was no evidence that

16   Plaintiff ever asked EMC for information regarding the identity of the owner of the obligation.

17   The Court granted Plaintiff leave to amend her TILA claim to include any factual allegations

18   regarding specific requests for the identity of the owner of the note.  In the FAC, Plaintiff

19   does not allege a TILA claim against EMC.  Furthermore, Plaintiff does not recite any facts

20   about requests to EMC for information regarding the identity of the owner of the note or

21   actions taken by EMC to deceive Plaintiff regarding the true owner.

22        Plaintiff claims that EMC failed to provide various documents, including  "executed

23   promissory notes, assignment instruments, note endorsements, allonges, pooling and

24   servicing agreements, mortgage identification numbers, and other documents and

25   information that would enable borrowers to track where their notes went after origination."

26   (FAC ¶ 92.)   Even assuming that Plaintiff specifically requested these documents (which

27   Plaintiff does not allege), it does not appear that EMC had any legal duty to produce all

28

8

documents that may help Plaintiff uncover the chain of ownership.[4]   Furthermore, in light of

TILA's requirement that upon written request by the borrower, the servicer provide, to the

best of its knowledge, information regarding the owner of the obligation or the master

servicer, the FAC does not allege facts showing that any refusal by EMC to produce

documentation regarding transfer(s) of the note harmed Plaintiff in any significant way.

Therefore, the Court finds that any refusal by EMC to produce the various documents sought

by Plaintiff does not constitute an "unfair" act within the meaning of California's Unfair

Competition Law.[5]

Plaintiff has failed to state a claim for violation of § 17200 against EMC.  Accordingly,

EMC's motion to dismiss is granted.

## C.  GMAC's Motion to Dismiss

The FAC asserts claims against GMAC for (1) violating California's Rosenthal Fair

Debt Collection Practices Act ("RFDCPA"), Cal Civ. Code § 1788.17, by contacting and

harassing plaintiff in writing 31 times after being directly notified of attorney representation,

in contradiction of 15 U.S.C. § 1692b(6) ; and (2) violating Cal. Bus. & Prof. Code § 17200.

GMAC contends that as a loan servicer, it is not a "debt collector" under the RFDCPA.

Some district courts have held that because the RFDCPA "mirrors" the FDCPA, and a loan

servicer does not meet the general definition of a "debt collector" under the FDCPA, a loan

servicer is not a "debt collector" under the RFDCPA.  See, e.g., LAL v. American Home

Servicing, Inc., 680 F. Supp. 2d 1218, 1224 (E.D. Cal. 2010); Nool v. HomeQ Servicing, 653

---

[4]  RESPA, 12 U.S.C. § 2605(e), governs the duty of loan servicers to respond to qualified written requests by borrowers.  A QWR must request information regarding the *servicing* of the loan.  12 U.S.C. § 2605e(1)(A).  It seems that the documents sought by Plaintiff do not pertain to the servicing of the loan.  At any rate, Plaintiff does not assert a RESPA claim against EMC.

[5]  It is unclear how courts should determine whether an "unfair" act or practice took place in the context of a consumer action.  Rubio v. Capital One Bank, ___ F.3d ___, 2010 WL 2836994, at *8 (9th Cir. July 21, 2010).  Under the balancing test, courts look to whether the harm to the consumer is outweighed by the practice's utility.  Id.  Under the alternative test, the plaintiff must show that the practice violates public policy as declared by specific constitutional, statutory, or regulatory provisions.  Id.  Plaintiff's claim fails under either test.

09cv2079 BTM(JMA)

F. Supp. 2d 1047, 1053 (E.D.Cal. 2009).  The Court is not convinced by the reasoning of these courts.

Despite the overlap between the federal and state statutory schemes, the definition of "debt collector" is broader under California law.  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another*."  15 U.S.C. § 1692a(6) (emphasis added).  Therefore, under the FDCPA, a debt collector does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt (as long as the debt was not in default at the time it was assigned).  Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985).  In contrast, the RFDCPA defines a "debt collector" as a person who "*on behalf of himself or herself* or others engages in debt collection." (Emphasis added.) As the Court observed in its previous order, this definition seems broad enough to encompass mortgage servicers.  See Fullmer v. JPMorgan Chase Bank, NA, 2010 WL 95206, *7 (E.D. Cal. Jan. 6, 2010) (rejecting argument of loan servicer that it was not a "debt collector" under the RFDCPA).

Plaintiff's RFDCPA claim fails for a different reason.  Plaintiff's RFDCPA claim is premised on a violation of 15 U.S.C. § 1692b(6).   However, Plaintiff does not allege facts establishing a violation of § 1692b(6).  Section 1692b(6) provides:

> Any debt collector communicating with *any person other than the consumer* for the purpose of acquiring location information about the consumer shall . . . after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

Section 1692b(6).  By its terms, § 1692b(6) "prohibits a debt collector from communicating with *third-persons* other than the consumer's attorney when the debt collector knows the consumer is represented by an attorney, for the purpose of acquiring location information about the consumer."  James v. Chase Bank USA, N.A., 2010 WL 3069696, * 2 (S.D. Cal. Aug. 4, 2010) (internal quotation marks omitted) (emphasis added).  Plaintiff complains that

1    GMAC contacted *her* after being notified that she was represented by an attorney.

2    Therefore, § 1692b(6) is inapplicable.

3         Section 1692c(a)(2) governs communication with the consumer after the debt

4    collector obtains knowledge that the consumer is represented by an attorney.  Section

5    1692c(a)(2) provides:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer *in connection with the collection of any debt* . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

11   (Emphasis added).  Plaintiff alleges that GMAC contacted her via e-mail and written letters

12   31 times after being notified that she was represented by an attorney.  (FAC ¶ 50.)

13   However, Plaintiff does not provide any detail regarding the communications.  Therefore,

14   the Court has no basis for concluding that the communications were for purposes of debt

15   collection.  See, e.g., Bailey v. Security Nat'l Serv. Corp., 154 F.3d 384 (7th Cir. 1998)

16   (holding that letter from mortgage service corporation informing the debtor of the current

17   status of the account was not a communication in connection with the collection of a debt);

18   Salsbury v. Trac A Chec, Inc., 365 F. Supp. 2d 939 (C.D. Ill. 2005) (holding that telephone

19   call informing debtor that debt collector would not be contacting plaintiff again due to

20   plaintiff's representation by an attorney was not a communication in connection with the

21   collection of a debt); Gillespie v. Chase Home Finance, LLC, 2009 WL 4061428, at * 5 (N.D.

22   Ind. Nov. 20, 2009) (holding that letters providing information regarding the possibility of

23   workout options were not the types of communications that § 1692c proscribes).

24        The RDCPA contains a provision similar to § 1692c(a)(2):

> No debt collector shall *collect or attempt to collect* a consumer debt by means of the following practices: . . . Initiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return

telephone calls, or discuss the obligation in question. This subdivision shall not apply where prior approval has been obtained from the debtor's attorney, or where the communication is a response in the ordinary course of business to a debtor's inquiry.

Cal. Civ. Code § 1788.14.   Again, the communication must be in the context of collection efforts.  See Marcotte v. General Elec. Capital Services, Inc., __ F. Supp. 2d __, 2010 WL 1573680, at * 7 (S.D. Cal. Apr. 20, 2010) (holding that communications at issue were actually billing statements and did not violate § 1788.14).  Plaintiff has not alleged facts establishing that GMAC's e-mails and letters attempted to collect a debt.   Therefore, Plaintiff's RFDCPA claim is dismissed for failure to state a claim.

Because Plaintiff has failed to state a claim for violation of the RFDCPA, to the extent Plaintiff's § 17200 claim against GMAC is premised on the RFDCPA claim, Plaintiff's § 17200 claim also fails.  Plaintiff's § 17200 claim fails for the additional reason that Plaintiff has not established the loss of money or property as a result of the alleged RFDCPA violation.  Under Cal. Bus. & Prof. Code § 17204, in order to have standing to bring a § 17200 suit, the plaintiff must have "suffered injury in fact and [have] lost money or property as a result of unfair competition."  The Court is not persuaded that attorney's fees incurred in suing for a violation constitutes injury within the meaning of § 17204 (otherwise, any plaintiff filing suit would be able to show injury).

To the extent Plaintiff's § 17200 claim is based on (1) GMAC acting with other defendants to collect mortgage payments under threat of foreclosure even though an assignment(s) of the promissory note was not recorded, a circumstance that allegedly deprives the current owner of any power to foreclose; (2) GMAC's "deliberate effort to conceal the identities of the true owners of the promissory notes"; and (3) GMAC's failure to provide various documents pertaining to the chain of ownership of the note, Plaintiff's claim is dismissed for the same reasons as discussed above in connection with EMC's motion to dismiss.   The FAC does not set forth facts establishing that the owner(s) of the notes at issue lacks the power to foreclose or that GMAC refused to respond to a request to provide the identity of the owner of the promissory notes (or deliberately provided incorrect information in response thereto).  In addition, for the reasons previously discussed, any

failure by GMAC to provide the various documents sought by Plaintiff does not constitute an unfair business practice.

### IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Aztec's motion to dismiss [Doc. No. 62], EMC's motion to dismiss [Doc. no. 63], and GMAC's motion to dismiss [Doc. No. 61].  Plaintiff's First Amended Complaint is **DISMISSED** as to these defendants.  However, the Court will give Plaintiff one more chance to amend her complaint to state claims against these defendants.  If Plaintiff chooses to amend her complaint, she must file the Second Amended Complaint within 20 days of the entry of this Order.

The preliminary injunction shall remain in effect as against all Defendants until entry of final judgment or until otherwise ordered by the Court.

**IT IS SO ORDERED.**

DATED:  October 27, 2010

Honorable Barry Ted Moskowitz
United States District Judge

13

09cv2079 BTM(JMA)