# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE KIM SELBY, | Case No. 09cv2079 BTM(JMA) |
| Plaintiff, | **ORDER ON MOTIONS TO DISMISS** |
| v. | |
| BANK OF AMERICA, INC., et al. | |
| Defendants. | |

Defendants Aztec Foreclosure Corporation ("Aztec"), EMC Mortgage Corporation ("EMC"), and GMAC Mortgage LLC ("GMAC"), each have filed a motion to dismiss Plaintiff's Second Amended Complaint. For the reasons discussed below, Aztec's motion to dismiss is **GRANTED**, EMC's motion to dismiss is **GRANTED**, and GMAC's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This case arises out of ten loans obtained by Plaintiff, which are secured by liens on five residential properties owned by Plaintiff.

Plaintiff resides at 2831 Angell Avenue, San Diego, CA 92122 (the "Angell property"). On October 17, 2005, Plaintiff refinanced the Angell property, borrowing $648,000 from Stearns Lending, Inc ("Stearns"). (Aztec RJN, Ex. A.) The loan was secured by a Deed of Trust, which named Stearns as the lender, MERS as a nominee for the lender and a

beneficiary, and Carriage Escrow, Inc. as the trustee. (Id.) In a Substitution of Trustee executed on May 28, 2009, The Bank of New York Mellon (fka The Bank of New York as successor Trustee to JPMorgan Chase Bank, National Association as Trustee for the Certificateholders of Structures Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series 2005-10 by EMC Mortgage Corporation as attorney in fact), which identified itself as the present beneficiary under the deed of trust, substituted Aztec as the trustee. (Aztec RJN, Ex. D.) On May 26, 2009, Aztec recorded a Notice of Default and Election to Sell Under Deed of Trust. (Aztec RJN, Ex. B.) On August 26, 2009, Aztec recorded a Notice of Trustee's Sale, scheduling the public sale of the Angell property to take place on September 16, 2009. (Aztec RJN, Ex. C.) The sale of the property was suspended and did not go through. EMC is the servicer of the Angell property loan.

GMAC is the servicer of the second loans secured by junior liens on Plaintiff's other four properties. Foreclosure proceedings have not been initiated with respect to these second loans.

In an order filed on February 10, 2010, the Court granted Aztec's motion to dismiss the original complaint and granted in part and denied in part motions to dismiss filed by GMAC and EMC.

On March 1, 2010, Plaintiff filed a First Amended Complaint ("FAC"). In an order filed on October 27, 2010, the Court granted motions to dismiss the FAC filed by Aztec, EMC, and GMAC.

On November 16, 2010, Plaintiff filed a Second Amended Complaint ("SAC"), which is the subject of the instant motions.

## II. STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th

Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks omitted). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. Id.

### III. DISCUSSION

**A. Aztec's Motion to Dismiss**

The SAC asserts the following claims against Aztec: (1) common law fraud; and (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f(6)(A). As discussed below, the Court concludes that both of these claims fail to state a claim against Aztec.

Plaintiff's fraud claim alleges that Defendants made false and fraudulent statements of material fact relating to Plaintiff's loans and properties by recording manufactured documents in public land records against her properties and submitting false statements to her that they were acting on behalf of the lawful owners of her obligations. (SAC ¶ 151.) With respect to Aztec, Plaintiff alleges that Aztec was not acting as an authorized agent of the beneficiary or trustee of the Deed of Trust when it recorded the Notice of Default because the BSALTA 2005-10 trust fund[1] was not the lawful owner of the promissory note. (SAC ¶¶ 40.) Plaintiff alleges that the promissory note was not properly transferred to the

---

[1] Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series 2005-10

trust because the promissory note was not endorsed to each person in the chain of assignments, but, rather was endorsed in blank along the way. (SAC ¶¶ 29-30.) Plaintiff alleges that the governing Pooling and Servicing Agreement as well as New York trust law prohibits the conveyance of property to trusts through endorsements in blank. (SAC ¶¶23-30.) Therefore, Plaintiff argues, the BSALTA 2005-10 trust is not the lawful owner of Plaintiff's promissory note, and the trustee of the BSALTA 2005-10 trust had no power to substitute Aztec as a trustee under the Deed of Trust. (SAC ¶ 31.) Plaintiff also alleges that the Substitution of Trustee was a forgery because it was signed by "Greg Allen" with the title of "VP" on behalf of the Bank of New York Mellon (trustee of the BSALTA 2005-10 trust) even though Mr. Allen was in fact an employee of Lender Processing Services, a company that is under criminal investigation. (SAC ¶¶ 33-37.)

Under California law, a claim of fraud must have the following elements: "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." In re Estate of Young, 160 Cal. App. 4th 62, 79 (2008) (quoting Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) (internal quotation marks omitted)). Federal Rule of Civil Procedure 9(b) requires that each of these elements be pled with particularity. It is unclear how Plaintiff *relied* on any improper substitution of Aztec as a trustee. Plaintiff was apparently already in default at the time Aztec recorded the Notice of Default, and Plaintiff does not allege that he made any payments as a result of Aztec's actions.

Plaintiff's fraud claim against Aztec also fails because it does not allege facts supporting a plausible claim of fraud. Contrary to Plaintiff's claims, the Pooling and Servicing Agreement and New York law do not prohibit the transfer of property to trusts through endorsements in blank. The Pooling and Servicing Agreement (Exh. A to SAC) provides:

> (b) In connection with the above transfer and assignment, the Seller hereby deposits with the Trustee or the Custodian, as its agent, with respect to each Mortgage Loan:
>
> (i) the original Mortgage Note, endorsed without recourse (A) to the order of the Trustee or (B) in the case of a Mortgage Loan registered on the MERS system, in blank, and in each case showing an unbroken chain of endorsements from the originator

>thereof to the Person endorsing it to the Trustee, or lost note affidavit together with a copy of the related Mortgage Note.

Plaintiff concedes that a final assignment in blank to the trust is permissible. However, Plaintiff argues, the "unbroken chain of endorsements" requirement means that all of the preceding assignments must have been specially endorsed to the transferee. There is nothing in the language of the agreement to support Plaintiff's interpretation. A chain of endorsements can include endorsements in blank showing that the original holder endorsed it in blank, and the bearer of the instrument in turn endorsed it in blank, and so on and so forth. Special endorsements are not necessary to establish a chain of title.

Moreover, New York law allows endorsements in blank. New York U.C.C. § 3-204(2) explains: "An indorsement in blank specifies no particular indorsee and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed."

Plaintiff contends that New York's Estates Powers and Trusts Law ("EPTL"), § 7-2.1, prohibits the conveyance of property to a trust by endorsements in blank. Plaintiff relies on the following language in § 7-2.1(c): "A trust as described in sections 9-1.5, 9-1.6 and 9-1.7 of the estates, powers and trusts law, including a business trust as defined in subdivision two of section two of the general associations law, *may acquire property in the name of the trust* as such name is designated in the instrument creating said trust." However, this statutory provision has nothing to do with whether assignments to the trust are accomplished by special endorsements or endorsements in blank. The purpose of this provision was to permit trusts to acquire property in the name of the trust so that the property could be conveyed, encumbered, or disposed of by a person authorized to do so by the trust instead of requiring the names and signatures of all of the trustees. McKinney's Consol. Laws of New York Annot., Commentary to § 7-2.1.

To the extent Plaintiff's fraud claim is based on the "forged" Substitution of Trustee, Plaintiff has failed to allege sufficient facts establishing that Greg Allen lacked the authority to sign on behalf of the trustee for the BSALTA 2005-10 trust. Although Allen was employed by Lender Processing Services ("LPS"), not Bank of New York Mellon, there is no evidence

1  that Allen was acting as something other than an agent for Bank of New York Mellon.  In
2  <u>Bain v. Met. Mortg. Group, Inc.</u>, 2010 WL 891585, at * 6 (W.D. Wash. 2010), the court
3  explained that LPS employees are granted the power to sign documents on behalf of entities
4  such as IndyMac by way of express contracts:  "LPS openly and lawfully allows its
5  employees to sign on behalf of its clients, pursuant to contract – which is the essence of
6  ordinary agency action everywhere. There is simply nothing deceptive about using an agent
7  to execute a document, and this practice is commonplace in deed of trust actions."  It does
8  not appear that the Bank of New York Mellon has objected to Allen signing on its behalf, and
9  Plaintiff has not alleged any facts supporting her conclusion that the Substitution of Trustee
10 was a "forged" document.   Therefore, Plaintiff's fraud claim against Aztec is dismissed for
11 failure to state a claim.
12       In addition to a fraud claim, Plaintiff asserts an FDCPA claim against Aztec under 15
13 U.S.C. § 1692f(6)(A), which prohibits "[t]aking or threatening to take an nonjudicial action to
14 effect dispossession or disablement of property if . . . there is no present right to possession
15 of the property claimed as collateral through an enforceable security interest."  Plaintiff's
16 FDCPA claim also rests on the premise that Aztec had no legal right to initiate foreclosure
17 proceedings against the Angell property because Aztec was not acting on behalf of the true
18 owner of Plaintiff's note.  Therefore, Plaintiff's FDCPA claim fails for the same reasons as
19 discussed above.
20
21 B. <u>EMC's Motion to Dismiss</u>
22       The SAC asserts the following claims against EMC: (1) common law fraud; (2) unjust
23 enrichment; (3) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.
24 § 2605(e)(2); (4) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641; and (5)
25 violation of RESPA, 12 U.S.C. § 2605(k).  The Court grants EMC's motion to dismiss as to
26 all of the claims.
27       Plaintiff's fraud claim against EMC is based on the same allegations underlying
28 Plaintiff's fraud claim against Aztec.  Again, Plaintiff alleges that her note was improperly

securitized and that, therefore, the BSALTA 2005-10 trust does not lawfully own her note, and EMC is not acting on behalf of the real owner of the note. Plaintiff's fraud claim fails for the same reasons as discussed above.

Plaintiff unjust enrichment claim also fails because it rests on the theory that EMC is not acting on behalf of the lawful owner of the note and lacked authority to receive monthly payments from Plaintiff. The SAC does not allege facts showing that EMC is not the proper servicer of the Angell property loan.

Plaintiff alleges that EMC violated RESPA,12 U.S.C. § 2605(e)(2), by failing to respond to Qualified Written Requests ("QWR") dated July 26, 2010 and October 20, 2010. Plaintiff also alleges that EMC violated 12 U.S.C. § 2605(k) (added by Pub.L. 111-203, Title XIV, §§ 1400(c), 1463(a), July 21, 2010, 124 Stat. 2136, 2182), by failing to provide her with the identity and address of the owner of the loan.

For the most part, Plaintiff's requests for information in her letters of July 26, 2010 and October 20, 2010 (Exs. I and J to SAC) do not fall within the scope of a QWR. A QWR must request information regarding the *servicing* of the loan. 12 U.S.C. § 2605e(1)(A). "Servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i). A demand disputing the validity of a loan, not its servicing, does not constitute a QWR. Keen v. American Home Mortgage Servicing, Inc., 2009 WL 3380454, at *7 (E.D. Cal. Oct. 21, 2009).

In the letters, Plaintiff requests a variety of information, including information regarding the "holder" of her note, entities to whom the note has been sold or transferred, entities to which Plaintiff's mortgage or deed of trust has been assigned, and the "Master Servicer" of the obligation. Plaintiff also requests a copy of the note with all endorsements and any allonge, a copy of each assignment, a copy of each written notice that has been sent to Plaintiff regarding the sale or transfer or assignment of the note, a copy of all documents

furnished to Plaintiff at closing, and a current statement of all late charges and/or penalties that have been assessed to the account.

Most of Plaintiff's requests do not actually pertain to the servicing of her account, but, rather, seek discovery regarding the assignments of her note. The only requests which pertain to the servicing of Plaintiff's account are her request for contact information for the "Master Servicer" of the obligation, her request for a current statement of late charges and penalties, and, arguably, her request for the identity and the contact information for the owner of her note. The latter request is also covered by 12 U.S.C. § 2605(k)(1)(D), a new provision added in 2010, which provides that a servicer of a federally related mortgage shall not "fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan." Accordingly, Plaintiff has adequately alleged violations of 12 U.S.C. § 2605(e)(2) and 12 U.S.C. § 2605(k).

EMC argues that even if it violated § 2605(e)(2) and (k)(1)(D), Plaintiff has failed to allege damages resulting from the violations. EMC raises a valid point. Section 2605(f)(1) provides that whoever fails to comply with any provision of § 2605 shall be liable in the following amounts:

In the case of any action by an individual, an amount equal to the sum of--

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

Plaintiff has not alleged facts showing a "pattern or practice" of noncompliance by EMC. Plaintiff alleges that EMC failed to respond to two letters. In Plaintiff's original complaint, Plaintiff alleged that EMC in fact had responded to a request for information that Plaintiff deemed to be a QWR. (Compl. ¶ 35.) Two instances of not responding to requests for information sent after the filing of a lawsuit do not rise to the level of a "pattern or practice." See In re Maxwell, 281 B.R. 101, 123 (Bankr. D. Mass. July 16, 2002) (holding that two instances of failing to respond to a QWR did not qualify as a pattern or practice of

noncompliance).

As for actual damages, Plaintiff seeks recovery of them but does not specify what they are. Plaintiff does not explain what damages she suffered as a result of not receiving a current statement of charges or penalties, information regarding the "master servicer," and information regarding the owner of the note. In her opposition, Plaintiff indicates that EMC's failure to answer has prevented her from resolving the issue of who is entitled to payments on her home's first mortgage, "causing pecuniary damages to Plaintiff's finances and the value of her property." (Plaintiff's Opp. at 7:20-22.)

However, as pointed out by EMC, the Notice of Default and Notice of Sale clearly identify the BSALTA 2005-10 trust as the current beneficiary of the note. Plaintiff has failed to allege facts showing that there is a genuine question whether the BSALTA 2005-10 trust is the actual beneficiary and holder of the note. Accordingly, the Court does not see how Plaintiff has been damaged by EMC's failure to respond to the Plaintiff's request for this information. The Court notes that these requests were made *after* the commencement of this lawsuit and the dismissal of Plaintiff's original complaint. There is no reason to believe Plaintiff would have been satisfied with EMC's answer since she continues to assert that the trust is not the lawful owner of the note.

Due to Plaintiff's failure to establish that she suffered actual damages as a result of EMC's alleged RESPA violations, the Court grants EMC's motion to dismiss as to the RESPA claims.

Plaintiff also alleges that EMC violated TILA, 15 U.S.C. § 1641(f), which provides: "Upon written request by the obligor, the servicer shall provide the obligor to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." Even if EMC violated § 1641(f), Plaintiff cannot bring suit against EMC under TILA. TILA provides for civil liability on the part of "any creditor who fails to comply with any requirement" imposed by TILA. 15 U.S.C. § 1640. Under certain circumstances, TILA actions may also be maintained against any assignee of a creditor against whom a civil action may be brought. 15 U.S.C. § 1641(a).

TILA makes it clear that a servicer "shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation." 15 U.S.C. § 1641(f)(2).

Based on the language of §§ 1640 and 1641, courts have held that "[w]hile it is the servicer of the loan that has the obligation to provide the information to the borrower pursuant to section 1641(f), liability for violations of TILA rests squarely and solely with creditors." Ording v. BAC Home Loans Serv., LP, 2011 WL 99016, at * 3 (D. Mass. Jan. 10, 2011) . See also Consumer Solutions REO, LLC v. Hillery, 2010 WL 144988, at *3 (N.D. Cal. Jan. 8, 2010) ("With respect to Saxon, a TILA damages claim predicated on a violation of § 1641(f)(2) cannot stand because TILA allows for a suit against a creditor or an assignee but not a servicer except under narrow circumstances not applicable here.") The SAC does not indicate that EMC is anything other than a servicer. Therefore, the Court dismisses Plaintiff's TILA claim against EMC.

C.  GMAC's Motion to Dismiss

Plaintiff asserts the following claims against GMAC: (1) fraud; (2) unjust enrichment; and (3) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). The Court grants GMAC's motion to dismiss as to the fraud and unjust enrichment claim and denies it as to the RFDCPA claim.

Plaintiff's fraud claim fails because Plaintiff does not provide any specific facts supporting the claim. Plaintiff points to the SAC's general allegations that for each of the loans, the promissory note was assigned from the originating lender to other persons without conveying the deed of trust, thus canceling the original nomination of MERS as the party designated to carry out the sale upon default by the borrower. (SAC ¶¶ 143, 144.) As a result, Plaintiff alleges, GMAC was not the agent of the true owner of the obligations. (SAC ¶ 147.)

There is no merit to Plaintiff's theory that assignment of the note nullifies MERS's

status as a nominee for the holder of the note. See, e.g., Kiah v. Aurora Loan Services, LLC, 2010 WL 4781849, at * 3 (D. Mass. Nov. 16, 2010) (holding that MERS could act as a nominee for successors and assigns of the original lender because the Deed of Trust provided that MERS was a nominee for the lender and lender's successors and assigns, and the transfer of the note automatically transfers the underlying security); In re Smith, 366 B.R. 149, 151 (Bankr. D. Colo. 2007) (explaining that according to the Deed of Trust, MERS functions as a nominee of the original lender and for the lender's "successors and assigns," rendering MERS the designated nominee for whoever the Note is assigned to). Plaintiff has not identified any other factual basis for her fraud claim. Therefore, the Court grants GMAC's motion to dismiss the fraud claim.

The Court also dismisses the unjust enrichment claim, which appears to be based on the same facts as the fraud claim. Plaintiff has failed to allege facts showing that GMAC has been unjustly enriched and that Plaintiff is entitled to restitution.

Plaintiff alleges that GMAC violated the RFDCPA by contacting and harassing Plaintiff directly even though GMAC had been notified of Plaintiff's representation by an attorney. The FDCPA provides:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer *in connection with the collection of any debt* . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C. § 1692c(a)(2) (emphasis added). The RFDCA requires compliance with this provision and other provisions of the FDCPA. Cal. Civ. Code 1788.17. Plaintiff alleges that GMAC violated § 1692c(a)(2) by contacting her in writing 31 times after being directly notified of attorney representation. (SAC ¶ 224.)

GMAC argues that Plaintiff's RFDCPA claim fails because Plaintiff does not allege facts showing that the loans in question were a "consumer debt." The RFDCPA defines "debt collection" as "any act or practice in connection with the collection of consumer debts."

Cal. Civ. Code § 1788.2(b). The term "consumer debt" is defined as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(4). A "consumer credit transaction" means "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person *primarily for personal, family, or household purposes*." Cal. Civ. Code § 1788.2(e) (emphasis added).

GMAC argues that because the loans in question were secured by investment properties, Plaintiff cannot allege that the loans were "primarily for personal, family, or household purposes." However, the nature of the security does not control whether the money was acquired for personal, family, or household purposes. In Slenk v. Transworld Systems, Inc., 236 F.3d 1072 (9th Cir. 2001), the Ninth Circuit explained that when determining whether a loan is a "consumer debt" for purposes of the FDCPA, which also requires that the subject of the transaction be "primarily for personal, family, or household purposes" (15 U.S.C. § 1692a(5)), courts should "examine the transaction as a whole" and "look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone." Id. at 1075 (internal quotation marks and citations omitted).

In the SAC, Plaintiff alleges that all ten loans were "consumer obligations arising from consumer credit transactions." (SAC ¶ 6.) The Court finds that this allegation is sufficient for pleading purposes. The Court will not require Plaintiff to plead details regarding what each loan was used for.

In its reply, GMAC resurrects its arguments that a loan servicer is not a debt collector under the RFDCPA and that the RFDCPA does not apply to the process of non-judicial foreclosures. These arguments are rejected for the same reasons as set forth in the Court's orders of 2/10/10 (8:18-20) and 10/27/10 (10:3-16).

GMAC also argues that Plaintiff has not sufficiently alleged that a "debt collection" occurred. The Court disagrees. Plaintiff alleges that each of the 31 contacts "was an attempt to collect on a consumer debt" that GMAC asserts is due and owing from Plaintiff.

(SAC ¶¶ 222, 224.) Given the number of contacts, Plaintiff made the reasonable decision to state that all of the contacts were attempts to collect on a consumer debt instead of describing the substance of each individual contact.

Plaintiff has sufficiently stated a claim for violation of the RFDCPA. Therefore, GMAC's motion to dismiss is denied as to this claim.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Aztec's motion to dismiss [Doc. No. 88] and EMC's motion to dismiss [Doc. No. 85]. Plaintiff's claims against Aztec and EMC are **DISMISSED** for failure to state a claim. GMAC's motion to dismiss [Doc. No. 87] is **GRANTED IN PART** and **DENIED IN PART**. The Court grants GMAC's motion as to the fraud and unjust enrichment claims but denies the motion as to the RFDCPA claim. Plaintiff's fraud (first cause of action) and unjust enrichment (second cause of action) claims against GMAC are **DISMISSED** for failure to state a claim. The Court **GRANTS** Plaintiff leave to amend her RESPA claim against EMC and her fraud and unjust enrichment claims against GMAC. If Plaintiff chooses to do so, she must file her Third Amended Complaint on or before **April 4, 2011**. If no amended complaint is filed by that date, GMAC shall file an answer to the SAC on or before **April 15, 2011**.

**IT IS SO ORDERED.**

DATED: March 14, 2011

Honorable Barry Ted Moskowitz
United States District Judge